# Wytheville.

## HALL v. CALDWELL & OTHERS.

### JUNE 29, 1899.

#### Absent, Riely, J.

1. MORTGAGE—*Loan of Money—Taking Title to Land—Knowledge of Others' Rights—Purchase by Joint Owner for Redemption.*—A son, having advanced for his father a sum of money to enable him to purchase a tract of land which had been sold under a deed of trust to secure a debt for which the father was primarily liable, and having taken a deed therefor in his own name, with full knowledge of the fact that a third party who had no notice or knowledge of the sale by the trustee owned an undivided one-half interest in the land, and that his father owned the other half and was primarily liable for the debt for which the land was sold, will be deemed to be a mortgagee of the land to the extent of the amount so advanced, for which sum the half interest of the father is first liable. The father will be deemed to be the real purchaser for the purpose of redemption, and the original rights of the third party will be restored, subject, however, to the lien of the son for the amount advanced by him.

Appeal from a decree of the Circuit Court of Pulaski county, pronounced March 22, 1898, in a suit in chancery, wherein the appellant was the complainant, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*J. C. Wysor*, for the appellant.

*Longley & Jordan*, for the appellees.

HARRISON, J., delivered the opinion of the court.

John W. Echols and wife, by deed dated February 19, 1890, conveyed to D. F. Hall and G. C. Caldwell, jointly, a certain house and lot in the city of Radford in consideration of $1,000. It appears that D. F. Hall paid his half of the purchase money in full; and that G. C. Caldwell assumed to pay off, as part of his half, certain unpaid purchase money due to the grantor of John W. Echols, which was secured by deed of trust on the property at the time of the joint purchase by Hall and Caldwell. There being default in the payment of a balance of this purchase money due to the grantor, Echols, amounting to $171.25, the trustee in the deed securing the same, advertised the property for sale on the 16th day of July, 1894, when it was knocked down to one B. H. Smith as the highest bidder, at $280. Neither Hall nor Caldwell appears to have known that the property was advertised, until after the sale was made. On the 21st day of July, 1894, B. H. Smith united with the trustee in a deed conveying this property to M. M. Caldwell, a son of G. C. Caldwell, in consideration of $290.

The bill in this case was filed in August, 1894, by D. F. Hall, setting forth his interest in the property in question, and alleging that G. C. Caldwell was the real purchaser thereof from B. H. Smith; that M. M. Caldwell had advanced the $290 to enable his father to make the purchase, and was the holder of the mere legal title to the property for the purpose of securing himself the money so advanced; that M. M. Caldwell knew, on the day the property was conveyed to him, and for two or three years prior thereto, that the complainant owned an undivided half interest therein; that in buying the property from B. H. Smith he had acted as the agent of his father, who was the joint owner with complainant, and also acted with full knowledge of all the equities, claims, and interests of complainant in and to the property.

The prayer of the bill is that M. M. Caldwell may be treated as the holder of the legal title for the benefit of complainant and G. C. Caldwell, as the interest of each may appear; that if M. M. Caldwell is entitled to a lien on said property for the $290 advanced by him, it may be held to be a lien only upon the interest of G. C. Caldwell; and that M. M. Caldwell may be compelled to convey complainant an undivided half interest in the property free from all encumbrance.

M. M. Caldwell filed a demurrer and answer to the bill, in which answer he denies the allegations of the bill, and insists that he, through the agency of his father, bought the property in question from B. H. Smith for himself, paid for it with his own money, and that D. F. Hall has no interest therein; that whatever interest he may have had was disposed of by the trustee when the property was sold on the 16th day of July, 1894, to B. H. Smith to satisfy a prior lien thereon.

The demurrer was properly overruled.

The evidence in the case establishes the following facts: That, after the sale by the trustee, G. C. Caldwell went to B. H. Smith, the purchaser, and bought from him the property for $290, saying that if he had known of the sale it would never have gone at a sacrifice; that the $290 paid to Smith was advanced by M. M. Caldwell; that M. M. Caldwell knew of the relation existing between his father and D. F. Hall, as joint owners of the property, and further knew that the unpaid purchase money for which the property had been sold was due from his father; that, on the day after the sale by the trustee, M. M. Caldwell called on W. R. Wharton, the attorney for the trustee and for the beneficiary under the trust deed, and complained that the property had been sold without any notice to him, saying that had he known of the sale it never should have occurred; that he would have paid the amount due and saved costs. He further stated that he recognized that D. F. Hall had a half interest in the property, and that he would take no advantage of Hall in

the matter; and only wanted the deed made directly to himself in order to secure the money he had advanced; that Hall, being uneasy and insisting upon having his rights in the property recognized by M. M. Caldwell in writing, W. R. Wharton prepared a paper to that effect, to be signed by the parties, and presented it to M. M. Caldwell, who said he would take it to his father, that he was acting in the matter for his father, and would not sign unless he agreed to it; that he subsequently returned the paper unsigned, saying that his father would not agree to it. These admissions were made by M. M. Caldwell more than once. It further appears that, on the morning after the sale, G. C. Caldwell told W. R. Wharton that he need not say anything to Hall about the sale, that he had or would arrange the matter with Smith, and that it was not necessary to bother Hall about it.

It further appears that, after the trustee had disbursed the purchase money, in paying the debt due and the costs of sale, there remained in his hands a balance of $26.78, which he paid over to M. M. Caldwell. This balance M. M. Caldwell would not have been entitled to had he been the purchaser of the property. He was only entitled to receive it upon the theory that he was advancing to his father only a sum sufficient to enable him to pay off the balance that he owed on the property as joint purchaser with D. F. Hall.

Upon these facts our conclusions are that G. C. Caldwell was the purchaser from B. H. Smith; that the purchase was made by him for the purpose of redeeming the property and restoring himself and Hall to their original rights as joint owners; that the amount due from G. C. Caldwell was advanced by his son, M. M. Caldwell, to enable the father to redeem the property; that the deed was made to M. M. Caldwell for the purpose of securing him the money he had advanced, and gave him no other or greater interest therein; that the claim now set up by M. M. Caldwell, that he bought the property for himself, and that D. F. Hall had no rights therein, is an afterthought,

and cannot be sustained; that, as soon as the purchase from B. H. Smith was consummated by G. C. Caldwell, the original rights of D. F. Hall as joint owner with him were at once restored, and were in no way prejudiced by the subsequent conveyance of the property to M. M. Caldwell.

For these reasons, the decree appealed from must be reversed, and a decree entered here requiring M. M. Caldwell to convey to D. F. Hall one undivided half interest in the property in the bill and proceedings mentioned, subject, however, to a lien in favor of the grantor for whatever may remain unpaid of the $290 advanced by him, after deducting therefrom the $26.78, part thereof, refunded to M. M. Caldwell by the trustee, and after crediting the remainder of said sum and its interest by the rents and profits of the property derived by M. M. Caldwell since it was conveyed to him, and further crediting the same by the fee simple value of that half of the property owned by G. C. Caldwell.

*Reversed.*